(76 South. 42)

## BLACK DIAMOND COAL MINING CO. v. JONES COAL CO. (6 Div. 574.)

(Supreme Court of Alabama. May 17, 1917.)

1. SPECIFIC PERFORMANCE ☞68—CONTRACTS ENFORCEABLE — CONTRACTS FOR SALE AND DELIVERY OF PERSONAL PROPERTY.

As a general rule specific performance of a contract for the sale and delivery of personal property will not be decreed.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 199.]

2. SPECIFIC PERFORMANCE ☞75—CONTRACTS ENFORCEABLE — CONTRACTS FOR SALE AND DELIVERY OF PERSONAL PROPERTY.

A contract for the purchase and sale of coal which required the defendant to sell to the plaintiff all of its output up to a stated daily average, for which the plaintiff was to pay monthly a stated amount per ton when loaded on cars for all coal shipped the previous month, and in which defendant agreed to load coal of standard quality and preparation, thus contemplating a continuous daily operation of the mines and requiring special skill, knowledge, and direction over a period of many months, and stipulating for succession of acts whose performance cannot be consummated by one transaction, will not be specifically enforced.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 210.]

3. SPECIFIC PERFORMANCE ☞6 — CONTRACTS INVOLVING PERSONAL PROPERTY — MUTUALITY.

Mutuality in the equitable remedy is of the essence of the right of specific performance of a contract involving personal property.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11.]

4. SPECIFIC PERFORMANCE ☞114(1) — CONTRACT INVOLVING PERSONAL PROPERTY—UNCERTAINTY IN COLLECTION OF JUDGMENT.

An averment indicating an uncertainty as to the collection of a judgment against the defendant was not alone sufficient to authorize specific performance of the contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 356, 366, 367, 370.]

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Suit for specific performance by the Black Diamond Coal Mining Company against the Jones Coal Company. From a judgment sustaining a demurrer to the bill and dissolving a temporary injunction, plaintiff appeals. Affirmed.

Bill by the Black Diamond Coal Mining Company, a corporation, against the Jones Coal Company, a corporation, each doing business in Walker county, Ala., for the specific performance of a contract. The contract sought to be here specifically enforced was executed February 16, 1917, pursuant to an option given by the respondent February 8, 1917. The contract is made an exhibit to the bill, and the portion thereof of importance here reads as follows:

"That for and in consideration of $1, the receipt of which is hereby acknowledged, and for other good and valuable considerations as hereinafter set forth, the said Jones Coal Company, party of the first part, does hereby sell to the said Black Diamond Coal Mining Company, party of the second part, all its output of straight mine run coal up to 100 tons daily average, for each working day of 20 days per month, and the said Black Diamond Coal Mining Company hereby buys from the said Jones Coal Company said tonnage of 100 tons daily average output, coal to be furnished from March 1, 1917, to February 28, 1918, and the Black Diamond Coal Mining Company agrees to accept same when loaded in railroad cars and to pay said Jones Coal Company therefor at the rate of $1.50 per ton of 2,000 pounds based on Southern Weighing and Inspection Bureau of Weights, as furnished by initial carrier; payments to be made on the 15th of each month for all coal shipped the previous month. The said Jones Coal Company agrees to load good clean merchantable coal of standard quality and preparation. It is mutually understood and agreed that this contract is made subject to the usual conditions governing coal contracts, such as shortage of cars, shortage of labor, strikes, accidents, and any other causes beyond the control of either party hereto."

The bill further shows that on the faith of said contract complainant made contracts with other parties for the sale of coal, which it purchased from defendant, and is now under contract for the delivery of the coal which it sold on the faith of said contract, and that it is necessary in order for complainant to carry out its contract with said other parties for defendant to comply with the said contract, and that defendant has refused to comply therewith, and will not deliver to complainant the coal as provided therein. It is further averred that complainant is ready and willing to pay defendant the price agreed for the coal, and to perform upon its part the provisions of said contract.

In paragraph 3 it is alleged that there is a great demand for coal, that it is very difficult to buy it in the open market, and that complainant could not go into the open market and buy coal at the price at which the defendant in said contract agreed to sell and deliver to complainant, nor could it buy the quantity so agreed upon in the open market. It is further averred that the respondent is a corporation with little capacity and uncertain financial ability, and that, if complainant should be compelled to wait until its damages have been sustained, the ability to enforce the collection of any damages recovered might be defeated by a failure of defendant or by a transfer of its property and holdings, and that the collection of any judgment which might be obtained would be uncertain; that defendant has not sufficient property and effects out of which to enforce a collection of the full amount of damages which complainant will sustain by the failure of defendant to deliver the coal as agreed.

The prayer is for the contract to be specifi-

cally enforced. Temporary injunction was issued, the bill was answered by the respondent, the answer containing demurrers testing the equity of the bill, and motion made to dissolve the injunction for want of equity in the bill, as well as the averments of the answer and affidavits offered. The answer set up fraudulent representations in the procurement of the contract, which need not be set out, and also alleged that it had a previous contract with the Southern Railway Company and the Southern Railway Company of Mississippi for a delivery of 50 tons per day, which contracts were in existence prior to the alleged contract here in question, and that respondent is unable to comply with the contract here in question on account of said previous contract, and that an enforcement of the contract would necessitate a breach of these prior contracts. The answer denies that the respondent is of uncertain financial ability, but avers that it owes practically no debts, owns its lease and mine equipment, and holds profitable contracts, and is making large sums of money, and is able to respond in damages to complainant in the event it should be so determined.

The court below was of the opinion the bill was without equity, and rendered a decree sustaining the demurrer and dissolving the injunction. From this decree the complainant prosecutes this appeal.

A. F. Fite, of Jasper, for appellant. John H. Bankhead, Jr., of Jasper, for appellee.

GARDNER, J. [1] By this bill complainant seeks specific performance of a contract for the sale and delivery of personal property. It is well recognized, of course, that as a general rule specific performance is not decreed when the subject-matter of the contract is personal property. 36 Cyc. 554. There are, of course, exceptions to this rule, with which, however, we are not here concerned. The complainant seeks to show a peculiar necessity for the compliance on the part of the respondent with the contract here in question and the uncertainty of recovery of damages out of respondent, and thus seeks to bring the case without the general rule. The contract requires of the respondent to sell to the complainant all its output of straight mine run coal up to 100 tons daily average for each working day of 20 days per month, coal to be furnished from March 1, 1917, to February 28, 1918, loaded on railroad cars, for which complainant was to pay $1.50 per ton, loaded on the cars; payment to be made on the 15th of each month for all coal shipped the previous month. The respondent further agreed "to load good, clean, merchantable coal of standard quality and preparation." The contract clearly contemplates a continuous daily operation of the mines, requiring, of course, special knowledge, skill, and direction, running over a period of many months. It not only requires

the delivery of the output of the mine up to 100 tons, daily average, for each working day of 20 days per month, but also that such coal shall be of a certain specified quality. Under the contract payment is not to be made upon delivery, but only on the 15th of each month for all coal shipped the previous month.

[2] The contract stipulates for a succession of acts whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction, with the exercise of special knowledge or judgment in such oversight, and such contracts are not, as a rule, specifically enforced under the express holdings of this court. Tombigbee Valley R. R. Co. v. Fairford Lumber Co., 155 Ala. 575, 47 South. 88; Electric Lighting Co. v. Mobile & Springhill Ry. Co., 109 Ala. 190, 19 South. 721, 55 Am. St. Rep. 927; Stewart v. White, 189 Ala. 192, 66 South. 623; Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 52 South. 423, 140 Am. St. Rep. 52; Dimmick v. Stokes, 151 Ala. 150, 43 South. 854; South & North Alabama R. Co. v. Highland Ave. R. R. Co., 98 Ala. 400, 13 South. 682, 39 Am. St. Rep. 74; Wingo v. Hardy, 94 Ala. 184, 10 South. 659; American Laundry Co. v. E. & W. Dry-Cleaning Co., 74 South. 58.[1] Nor do we consider that the case of Hendricks v. Hughes, 117 Ala. 591, 23 South. 637, cited by counsel for appellant, at all out of harmony with these authorities or the conclusion here reached.

There are recognized exceptions to the rule, particularly in those cases in which the public has an interest. Stewart v. White, supra. Such was the case of Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843, cited by counsel for appellant, as well as that of Schmidtz v. L. & N. R. R. Co., 101 Ky. 441, 41 S. W. 1015, 38 L. R. A. 809, from the Kentucky Court of Appeals. We recognize that there have been some departures from this general rule, and an expansion by some of the courts of the remedy of specific performance (36 Cyc. 587; Montgomery L. & P. Co. v. Montgomery Traction Co. [C. C.] 191 Fed. 657), but this court expressly adhered to its former rulings in the very recent case of Stewart v. White, supra.

[3] It has been frequently held by this court that mutuality in the equitable remedy was of the essence of the right to specific performance of the contract. Electric Light. Co. v. Mobile & Springhill Ry. Co., supra; Irwin v. Bailey, 72 Ala. 467; Tombigbee Valley R. R. Co. v. Fairford Lumber Co., supra; 36 Cyc. 621, 622, and note, where the rule is criticized. The question as to mutuality of remedy in cases of this character is made the subject of a statute in California. (Section 3386, Civil Code Cal.) There are also exceptions to this rule, but the case here is clearly not within any of

[1] 199 Ala. 154.

them. Tombigbee Valley R. R. Co. v. Fairford Lumber Co., supra. The contract here in question provides for the delivery of coal to the complainant and contemplates its shipment by the complainant and a monthly credit extended. Had coal declined in price, rather than advanced, it is quite clear that respondent could not have maintained a bill requiring the complainant to accept the coal, and pay for the same at the price agreed upon, but his remedy would have been an action at law. Stewart v. White, supra.

[4] The bill does not aver the insolvency of respondent, but contains averments indicating an uncertainty in the collection of judgment against the respondent. We are of the opinion that such averment of uncertainty alone is not sufficient to authorize the relief sought. 36 Cyc. 564.

It may be recognized that in some instances hardships result in the declination on the part of the court of equity to assume jurisdiction in cases of this character. Indeed, this court so expressed itself in Stewart v. White, supra. The case presented by this bill, however, comes within the rule long established in this state and undisturbed by any of our decisions, and we are not sufficiently impressed to a contrary view as to cause us to depart therefrom. In some of the states the question has been given consideration by the law-making body. 36 Cyc. 564, note.

It results that in our opinion the bill is without equity, and the decree of the court below will accordingly be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.